ORIGINAL

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

FILED
JUL 14 2005
U.S. COURT OF FEDERAL CLAIMS

CINCINNATI INSURANCE COMPANY,

vs. No. 05-751C

THE UNITED STATES OF AMERICA

**COMPLAINT**

Comes the Plaintiff, Cincinnati Insurance Company ("Cincinnati"), by counsel, and for its causes of action against the Defendant, The United States of America, states as follows:

1. Cincinnati is a surety company incorporated in the State of Ohio, with its principal place of business located in Cincinnati, Ohio.

2. Lasker, Inc. ("Lasker") is a construction contractor located in Conway, Arkansas.

3. In 2003, Lasker bid upon and was awarded a construction contract by the United States of America by and through the U.S. Army Corps of Engineers ("USA" or "Corps") to perform the work set forth in Contract EACA03-03-C-0011, C-130J Engine and Propeller Storage Building, Little Rock Air Force Base, Pulaski County, Arkansas (the "Project").

4. Pursuant to its contractual obligations owing to the USA as well as the Miller Act (40 U.S.C. §3131), Lasker procured performance and payment bonds from Cincinnati as surety, and provided same to the Corps. The penal amount for each bond was $1,811,000.00.

5. This Court has jurisdiction over this matter by virtue of involving the doctrine of equitable subrogation of the Tucker Act 28 U.S.C. §1491(a)(1) and the doctrine of equitable subrogation mandates the payment of money. United States Fire Insurance Company v. United States, 61 Fed.Ct. 494 (2004).

6. While construction was proceeding, the USA's Contracting Officer's representative on May 20, 2004 notified Lasker, as well as Cincinnati, and the United States Small Business Administration, of Lasker's failure to properly pay its subcontractors as well as Lasker's possible violations of the Prompt Payment Act (31 USC §3905) and the Project's Prompt Payment for Construction Contract clause (FAR §52.232-27).

7. On June 23, 2004, the Corps sent a fax to Cincinnati's counsel advising him that while Lasker was requesting payment in the amount of $146,274.40 for Lasker's Pay Application No. 10 dated June 17, 2004, the Corps indicated that it would pay only $67,000 to Lasker and withhold the remaining amount of $116,000 until the project was closed out.

8. On June 25, 2004, Cincinnati's counsel advised the Corps of Lasker's unpaid subcontractors and Lasker's apparent falsification of Pay Application No. 10, as well as Lasker's inability to comply with its prompt payment obligations. Cincinnati also requested the Corps to review Lasker's contract status and to enforce the contract provisions applicable to non-payment to subcontractors. Cincinnati also notified the Corps that all surety consents for payments to Lasker were withdrawn.

9. On June 26, 2004, the Corps' Contracting Officer's representative notified Lasker that Lasker's Pay Application No. 10 was determined by the Corps to be improperly submitted due to:

a. Lasker requesting 100% payment for activities which still required punch list work;

b. Remaining contract balance was insufficient … "to protect Government's interest for outstanding payments due subcontractors and/or suppliers;"

c. Lasker's breach of contract for not paying subcontractors properly; and

d. Defective certification included with pay application.

The Corps' Contracting Officer's representative also stated that the Corps will take no action on Lasker's Pay Application No. 10. However, Lasker was advised by the Corps that it was permitted to re-submit the Pay Application upon satisfying the described deficiencies. This letter was also provided to Cincinnati's counsel by fax on June 26, 2004.

10. On August 4, 2004, Lasker sent a letter to the Corps directing the Corps to forward all payments due or to become due Lasker to Cincinnati. Lasker also provided the Corps of Engineers with an "Assignment From Principal to Surety of Contract Rights and Proceeds" dated August 4, 2004.

11. By e-mail dated August 11, 2004, the Corps' Contracting Officer's Office acknowledged discussing the Notice of Assignment with Lasker on August 10, 2004 and states the Corps will accept the Notice of Assignment in order to assist Lasker in its relations with its surety, Cincinnati.

12. Despite Lasker's failure to remedy the deficiencies set forth by the Corps' Contracting Officer's representative in its June 26, 2004 letter, the Corps apparently made payment to Lasker on or about August 4, 2004 in the amount of $106,477.50. According to Lasker, only about $20,000 of the Corps' payment of $106,477.50 was paid to Lasker's subcontractors and suppliers for the Project. The remaining sum of approximately $86,500 went to other Lasker creditors or debts unrelated to the Project.

13. The Government has an obligation owing to the surety to make payments to the contractor in accordance with the bonded contract and to administer the contract during the course of its performance in a way that does not materially increase the risk that was assumed by the surety when the contract was bonded.

14. By the Corps' release of contract funds on or about August 4, 2004, the Corps failed to make payments in accordance with the bonded contract and applicable regulations. By disregarding these obligations that provide security to the surety for the bonded performance, the Corps has materially changed the contract and materially increased the risk of loss that was assumed by Cincinnati when it bonded the Project.

15. By releasing said payment while Lasker was knowingly in default of and in violation of its contractual obligations, the Corps' Contracting Officer abused his discretion and disregarded the interests of Cincinnati.

16. As a result of the Corps' wrongful actions described above, Cincinnati has been damaged and is entitled to recover the sum of approximately $86,500.00 from the Corps.

17. On February 11, 2005, Cincinnati requested the Corps' Contracting Officer issue a Contracting Officer's Decision on Cincinnati's claims that the Contracting Officer had abused his discretion and disregarded the interests of the surety. Consequently, Cincinnati requested the Contracting Officer issue a decision finding that Cincinnati was entitled to be paid the sum of approximately $86,500.00 as a result of the Corps' wrongful actions.

18. By letter dated May 17, 2005, the Corps' Contracting Officer responded to Cincinnati's request by stating a Contracting Officer's decision would not be issued and there had been no wrongful payment to Lasker.

19. Cincinnati has settled amounts due to Lasker's subcontractors on the Project and such payments made by Cincinnati exceed $150,000.00. Under the doctrine of equitable subrogation, Cincinnati is entitled to bring suit against the United States for damages resulting from the above-described wrongful actions.

WHEREFORE, Cincinnati respectfully requests this Court rule as follows:

1. A judgment against USA in the amount of $86,500.00, or an amount to be proven at trial, to fully compensate Cincinnati for its damages incurred;

2. Pre-judgment and post-judgment interest at the maximum allowable rates;

3. Its costs incurred herein; and

4. Any and all other relief that Cincinnati may appear entitled.

Respectfully submitted,

G. BRUCE STIGGER
ALBER CRAFTON, PSC
Hurstbourne Place, Suite 1300
9300 Shelbyville Road
Louisville, Kentucky 40222
Telephone: (502) 815-5000
Facsimile: (502) 815-5005
COUNSEL FOR PLAINTIFF,
CINCINNATI INSURANCE COMPANY

Dated: July 12th, 2005