IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CINCINNATI INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 05-751C |
| | ) | (Judge Firestone) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

# DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

JAMES M. KINSELLA
Deputy Director

DORIS S. FINNERMAN
Trial Attorney
Commercial Litigation Branch
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 307-0300
Fax: (202) 305-7643

Attorneys for Defendant

October 27, 2005

# TABLE OF CONTENTS


**PAGE(S)**

STATEMENT OF THE ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

I. A Surety, Having Performed Pursuant To Its Payment Bond Obligations, Cannot Maintain An Action Against The United States For Reimbursement . . . . . . . . . . 4

A. The Court Of Federal Claims Is A Court Of Limited Jurisdiction . . . . . . . . . . . . 4

B. There Is No Privity Between A Non-Takeover Surety And The United States . . 5

C. The United States Did Not Owe Any Duties To The Plaintiff . . . . . . . . . . . . . . . 8

II. In The Alternative, Summary Judgment Is Appropriate . . . . . . . . . . . . . . . . . . . . . . . . . 9

A. The Government Is Entitled To Judgment As A Matter Of Law . . . . . . . . . . . . . 9

B. The Government's Decision To Pay Lasker Was Not Arbitrary Or Capricious . 10

## TABLE OF AUTHORITIES

**CASES** **PAGE(S)**

Admiralty Constr., Inc. v. Dalton,
156 F.3d 1217 (Fed. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Aetna Casualty & Surety Co. v. United States,
228 Ct. Cl. 146, 655 F.2d 1047 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

American General Leasing, Inc. v. United States,
218 Ct. Cl. 367, 587 F.2d 54 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

American Science and Engineering, Inc. v. United States,
229 Ct. Cl. 47, 663 F.2d 82 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Argonaut Ins. Co. v. United States,
193 Ct. Cl. 483, 434 F.2d 1362 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10, 11

Balboa Ins. Co. v. United States,
775 F.2d 1158 (Fed. Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10, 11

Celotex Corp. v. Catrett,
477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Fidelity Constr. Co. v. United States,
700 F.2d 1379 (Fed. Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Fidelity & Deposit Co. v. United States,
31 Fed. Cl. 540 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Fireman's Fund Ins. Co. v. United States,
909 F.2d 495 (Fed. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Insurance Company of the West v. United States,
243 F.3d 1367 (Fed. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Inter-Coastal Xpress, Inc. v. United States,
296 F.3d 1357 (Fed. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

**TABLE OF AUTHORITIES (CON'T)**

**CASES** **PAGE(S)**

International Audiotext Network, Inc. v. AT & T Co.,
62 F.3d 69 (2d Cir. 1995) . . . . . . . . . . 2

Library of Congress v. Shaw,
478 U.S. 310 (1986) . . . . . . . . . . 4

Mingus Constructors, Inc. v. United States,
812 F.2d 1387 (Fed. Cir. 1987) . . . . . . . . . . 9

National Leased Housing Assoc. v. United States,
105 F.3d 1423 (Fed. Cir. 1997) . . . . . . . . . . 5

Paul v. United States,
371 U.S. 245 (1963) . . . . . . . . . . 11

Royal Indem. Co. v. United States,
208 Ct. Cl. 809, 529 F.2d 1312 (1976) . . . . . . . . . . 8

Schoenbrod v. United States,
187 Ct. Cl. 627, 410 F.2d 400 (1969) . . . . . . . . . . 12

Standard Oil Co. of California v. Johnson,
316 U.S. 481 (1942) . . . . . . . . . . 11

State of Florida v. United States,
33 Fed. Cl. 188 (1995) . . . . . . . . . . 12

Sweats Fashions, Inc. v. Pannill Knitting Co.,
833 F.2d 1560 (Fed. Cir. 1987) . . . . . . . . . . 9

United States Fid. & Guar. Co. v. United States,
201 Ct. Cl. 1, 475 F.2d 1377 (1973) . . . . . . . . . . 8

United States Fid. & Guar. Co. v. United States,
230 Ct. Cl. 355, 676 F.2d 622 (1982) . . . . . . . . . . 8, 10, 12

United States v. Munsey Trust Co.,
332 U.S. 234 (1947) . . . . . . . . . . 7

**TABLE OF AUTHORITIES (CON'T)**

**CASES** **PAGE(S)**

United States v. Testan,
424 U.S. 392 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

**STATUTES**

28 U.S.C. § 1491 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

# INDEX TO APPENDIX

**EXHIBIT**

1 Lasker's Application for Payment - Application No. 10, June 17, 2004

2 Corps' fax to Tom Crafton (Surety), June 23, 2004

3 Surety's letter to the Contracting Officer's Representative re Pay Application No. 10, June 25, 2004

4 Contracting Officer's Representative's Rejection of Pay Application No. 10, June 26, 2004

5 Lasker's Revised Payment Application No. 10, July 26, 2004

6 ENG Form 93 - Payment Estimate - Contract Performance re: Invoice received July 27, 2004

7 Payment history

8 Lasker's letter to the Army Corps of Engineers demanding that payment be made to surety, August 4, 2004

9 Surety's request for reimbursement of funds, August 30, 2004

10 Contracting Officer's response to surety's request for reimbursement, September 10, 2004

11 Surety's request for a Contracting Officer's decision, February 11, 2005

12 Contracting Officer's response to surety's request for decision

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CINCINNATI INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 05-751C |
| | ) | (Judge Firestone) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S MOTION TO DISMISS OR, IN THE
ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 12(b)(6) of the United States Court of Federal Claims, defendant respectfully requests that the Court dismiss the complaint because it fails to state a claim upon which relief can be granted. The plaintiff, Cincinnati Insurance Company ("CIC") is neither in privity with the Government nor is equitably subrogated to an entity which is in privity with the Government. Alternatively, pursuant to Rule 56, defendant respectfully requests the Court to grant summary judgment in favor of the United States upon the ground that there is no genuine issue of material fact in dispute and the Government is entitled to judgment as a matter of law. In support of this motion, we rely upon the complaint, the defendant's proposed findings of uncontroverted fact and appendix thereto, and the following brief.

DEFENDANT'S BRIEF

STATEMENT OF THE ISSUES

1. Whether the plaintiff may bring its action against the United States since the plaintiff is not in privity with the Government and it is not equitably subrogated to a party in privity with the Government.

2. Whether the Government's decision to pay the contractor was arbitrary and capricious.

STATEMENT OF FACTS

In 2003, the United States Army Corps of Engineers ("Corps") entered into a construction contract with Lasker, Inc. ("Lasker"). Compl. ¶ 3. The total initial contract price was $1,811,000.00. Ex. 1. CIC, as surety, provided payment and performance bonds for the project in the penal sums of $1,811,000.00. Compl. ¶ 4.

On June 17, 2004, Lasker submitted pay application number 10, seeking $146,247.40. Ex. 1.[1] On June 23, 2004, the Corps advised CIC that the Corps contemplated paying Lasker only $67,000, while retaining $116,000 for closeout, punchlist, and incomplete work. Ex. 2. On June 25, 2004, CIC sent a letter to the Corps, addressed to the contracting officer's representative, advising that CIC had received claims from Lasker's subcontractors. CIC purported to "withdraw" its "previous consents" to make payment to Lasker. Ex. 3.

On June 26, 2004, the contracting officer's representative advised Lasker that its pay application number 10 was "not a proper invoice." The reasons stated for rejecting the application were the existence of deficiencies and/or incomplete work as reflected on a final punch list, the fact that the remaining contract balance was insufficient to protect the Government's interest for payments due to subcontractors and suppliers, the fact that subcontractors and suppliers had not been paid from previous payments, and, accordingly, Lasker's certification, pursuant to FAR 52.232-5, was inconsistent with its nonpayment of

---

[1] Although the court is not permitted to consider matters outside the pleadings on a Rule 12(b)(6) motion, it may consider documents upon which the complaint relies and which are integral to the complaint. International Audiotext Network, Inc. v. AT & T Co., 62 F.3d 69, 72 (2d Cir. 1995) (per curiam).

At the time that Lasker submitted application number 10, it had already received $1,636,923.60, leaving a balance of contract funds of $183,684.40. Pay application number 10 was not a request for final payment. Ex. 1.

subcontractors and suppliers. Ex. 4. On or about July 27, 2004, Lasker submitted a revised pay application number 10, and on August 3, 2004, payment was made to Lasker in the amount of $106,447.50. Exs. 5 and 6.

On August 4, 2004, Lasker sent a letter to the Corps demanding that all further payments be forwarded directly to CIC. Ex. 8. On August 30, 2004, CIC sent a letter to the Corps advising that it had learned of the recent payment to Lasker and demanding that Corps reimburse CIC for cost and expenses related to the "premature release of contract funds." Ex. 9. The contracting officer responded on September 10, 2004, advising CIC that, in accordance with FAR 28.106-7(a), he was precluded from withholding payment to Lasker.[2] The letter further advised that the Corps had received an "Assignment of Claims" on August 12, 2004, but that payment to Lasker had already been made. Ex. 10.

On February 11, 2005, CIC filed a certified claim for damages resulting from the Corps' payment of $106,477.50 to Lasker. Ex. 11. On May 17, 2005, the contracting officer denied CIC's clallegation that a wrongful payment had been made. Ex. 12.

---

[2] FAR section 28.106-7, Withholding contract payments, provides, in relevant part:

> (a) During contract performance, agencies shall not withhold payments due contractors or assignees because subcontractors or suppliers have not been paid.
> (b) If, after completion of the contract work, the Government receives written notice from the surety regarding the contractor's failure to meet its obligation to its subcontractors or suppliers, the contracting officer shall withhold final payment. However, the surety must agree to hold the Government harmless from any liability resulting from withholding the final payment. The contracting officer will authorize final payment upon agreement between the contractor and surety or upon a judicial determination of the rights of the parties.

CIC now seeks reimbursement, based upon a theory of equitable subrogation, of monies it claims it paid to Lasker's subcontractors. To the extent that CIC made payments to subcontractors of Lasker, such payments were made pursuant to its obligations under its payment bond with Lasker. At no time did CIC finance completion of the project or execute a takeover agreement with the Government to complete construction performance.

## SUMMARY OF ARGUMENT

A surety that paid subcontractors under a payment bond obligation is subrogated only to the rights of the subcontractors. Such a surety is, therefore, not in privity with the United States and cannot bring a claim against the United States under the Tucker Act.

## ARGUMENT

### I. A Surety, Having Performed Pursuant To Its Payment Bond Obligations, Cannot Maintain An Action Against The United States For Reimbursement

#### A. The Court Of Federal Claims Is A Court Of Limited Jurisdiction

The United States Court of Federal Claims is a Court of limited jurisdiction. See Inter-Coastal Xpress, Inc. v. United States, 296 F.3d 1357, 1365 (Fed. Cir. 2002). Absent congressional consent to entertain a claim against the United States, the Court lacks authority to grant relief. United States v. Testan, 424 U.S. 392, 399 (1976).

Congressional consent to suit must be explicit and strictly construed. Library of Congress v. Shaw, 478 U.S. 310, 318 (1986); Fidelity Constr. Co. v. United States, 700 F.2d 1379, 1383 (Fed. Cir. 1983). A waiver of sovereign immunity, therefore, cannot be implied, but must be expressed "unequivocally" by Congress. Testan, 424 U.S. at 399; Insurance Company of the West v. United States, ("ICW") 243 F.3d 1367, 1372 (Fed. Cir. 2001).

Congressional consent to suit in this Court is generally found in the Tucker Act, 28

U.S.C. § 1491. Testan, 424 U.S. at 397; Aetna Casualty & Surety Co. v. United States, 228 Ct. Cl. 146, 151, 655 F.2d 1047, 1051 (1981). Under that statute, an action may be maintained in this Court only if it is "founded either upon the Constitution or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491 (1982). In ICW, the United States Court of Appeals for the Federal Circuit held that the Tucker Act provides a waiver of the Government's sovereign immunity to be sued not only by those with whom it contracts directly but also by those who – by operation of law – "stand in the shoes" of its contractors. ICW, 243 F.3d at 1375.

B. There Is No Privity Between A Non-Takeover Surety And The United States

To establish jurisdiction in this Court based upon contract, a plaintiff must establish privity between it and the Government. National Leased Housing Assoc. v. United States, 105 F.3d 1423, 1435-47 (Fed. Cir. 1997). Therefore, a surety's right to sue must rest either upon a contract right of its own or the equitable doctrine of subrogation. Fidelity & Deposit Co. v. United States, 31 Fed. Cl. 540, 542-43 (1994). CIC does not allege that it has any independent contractual rights with the United States. Therefore, if CIC is in privity with the Government, it can only be as a result of the equitable doctrine of subrogation.

The Federal Circuit has identified only "two circumstances in which a surety may succeed to the contractual rights of a contractor against the government: when the surety takes over contract performance or when it finances completion of the defaulted contract." ICW, 243 F.3d at 1370. In those circumstances, the "non-contractual doctrine of equitable subrogation" comes into play and is, in effect, an assignment of the contractor's rights by

operation of law. See ICW, 243 F.3d at 1374-75; Admiralty Constr., Inc. v. Dalton, 156 F.3d 1217, 1221 (Fed. Cir. 1998). However, absent takeover of the contract or financing completion of the contract, the surety is not equitably subrogated to the rights of the contractor.

Having considered the doctrine of subrogation, the court of appeals in ICW then examined the waiver of sovereign immunity found in the Tucker Act insofar as it relates to a surety. The scope of that waiver may be derived from the Court's conclusion that "a subrogee, after stepping into the shoes of a government contractor, may rely on the waiver of sovereign immunity in the Tucker Act and bring suit against the United States." 243 F.3d at 1375 (emphasis added). The Court also stated that the subrogee, as an assignee by operation of law, has "the same right[s]" as the Government contractor, "with its advantages and disadvantages." Id. at 1374 (emphasis added). As a prerequisite then to jurisdiction under the Tucker Act, the facts must establish that the surety first "step[ped] into the shoes of a government contractor." Id. at 1375.

CIC alleges in its complaint that it paid subcontractors who were owed monies by Lasker. This act was nothing more than what was required by the payment bond between CIC and Lasker, for which CIC was paid. As such, the surety's actions fall within the

> well-established [rule] that a surety who discharges a contractor's obligation to pay subcontractors is subrogated only to the rights of the subcontractor. Such a surety does not step into the shoes of the contractor and has no enforceable rights against the [G]overnment.

ICW, 243 F.3d at 1371.[3]

[3] In ICW, both ICW and The Surety Association of America ("SAA"), as *amicus curiae*, filed motions to amend the Court's opinion. ICW argued that the above-quoted statement was "an inaccurate statement of the law" and that the Court surely did not "intend[] to question

This articulation of the law is consistent with the Supreme Court's decision in United States v. Munsey Trust Co., 332 U.S. 234 (1947), upon which the court of appeals relied, and in which the Supreme Court said,

> If the United States were obligated to pay laborers and materialmen unpaid by a contractor, the surety who discharged that obligation could claim subrogation. But nothing is more clear than that labors and materialmen do not have enforceable rights against the United States for their compensation.

332 U.S. at 241 (emphasis added). Thus, where a surety, pursuant to a payment bond, pays subcontractors, it has the same rights as the subcontractors, and its recourse is the same as that of the subcontractors – it may bring suit against the prime contractor, not the United States. The surety cannot acquire by subrogation what the subcontractor, whose rights it claims, does not have. See Munsey Trust, 332 U.S. at 242.

The rationale for distinguishing between, on the one hand, performance bond or takeover sureties and, on the other, sureties that merely satisfy the payment obligations of the prime contractor, lies in the benefit derived by the Government from the acts of the surety. The purpose of a performance bond is "assure that the government has a completed project for the agreed contract price." Westech Corp. v. United States, 20 Cl. Ct. 745, 751 (1990) (citation omitted). Once the contract is complete, the Government's interest in assuring performance no longer requires the protection afforded by the bond. "When laborers and materialmen, however, are unpaid and the work is complete, the government suffers no damage." Munsey Trust, 332 U.S. at 244. "By definition and agreement the surety protects the government's interest, not the

---

this long-standing jurisdiction over suits by payment bond sureties." The SAA argued that a payment bond surety was subrogated to the rights of the contractor and had standing to sue the United States. Both parties asked the Court to strike the above-quoted statement. Without discussion, the Court denied the motions to amend.

other way around." Fireman's Fund Ins. Co. v. United States, 909 F.2d 495, 499 (Fed. Cir. 1997).

In this case, CIC stands in the shoes of the subcontractors, whose claims it paid. As such, it lacks privity with the United States, and its complaint fails to state a claim upon which relief can be granted.

C. The United States Did Not Owe Any Duties To The Plaintiff

The gist of CIC's complaint is that the Government had a duty to CIC which included the duty to withhold funds from Lasker. Compl.¶ ¶ 13-15. Given the unambiguous language in ICW, CIC cannot claim that the Government had any duties owed to CIC, Compl. ¶¶ 13, 15, because it is not in privity with the United States, nor is it equitably subrogated to such a party.

The surety's substantive claim echoes the language of cases such as Balboa Ins. Co. v. United States, 775 F.2d 1158 (Fed. Cir. 1985); United States Fid. & Guar. Co. v. United States, 230 Ct. Cl. 355, 676 F.2d 622 (1982); Royal Indem. Co. v. United States, 208 Ct. Cl. 809, 529 F.2d 1312 (1976); United States Fid. & Guar. Co. v. United States, 201 Ct. Cl. 1, 475 F.2d 1377 (1973); and Argonaut Ins. Co. v. United States, 193 Ct. Cl. 483, 434 F.2d 1362 (1970), in which the Court previously held that the Government acts as a stakeholder with respect to unpaid contract funds once notified by the surety of possible default by the contractor.

In light of the Federal Circuit's ruling in ICW, such stakeholder duties enunciated in Balboa and its progeny did not survive with respect to a claim by a payment bond surety. CIC is subrogated only to the rights of the subcontractors it paid pursuant to its payment bond obligations. In ICW, the Court reviewed the common law rights of an assignee with respect to contract rights: "[T]he assignee of a claim stepped into the shoes of the assignor for all

purposes: 'an assignment transfers to the assignee the same right held by the assignor, with its advantages and disadvantages.'" 243 F.3d at 1374 (citing Restatement (Second) of Contracts at § 340 cmt. a). It concluded that the doctrine of sovereign immunity did not change the common law, which allowed assignees to step into the shoes of the assignor. Id. Based upon this analysis, the Court held that "a subrogee, after stepping into the shoes of a government contractor, may rely on the waiver of sovereign immunity in the Tucker Act and bring suit against the United States." Id. at 1375. This waiver of sovereign immunity, however, is limited. "The party for whose benefit the doctrine of subrogation is exercised can acquire no greater rights than those of the party for whom he is substituted." Globe Indem. Co. v. United States, 84 Ct. Cl. 587, 595 (1937). Thus, because a subcontractor cannot bring a claim against the United States, neither can the one who stands in the shoes of the contractor.

## II. In The Alternative, Summary Judgment Is Appropriate

### A. The Government Is Entitled To Judgment As A Matter Of Law

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Mingus Constructors, Inc. v. United States, 812 F.2d 1387, 1390 (Fed. Cir. 1987). The moving party must identify the legal and factual bases for its motion and specify those portions of the record that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Sweats Fashions, Inc. v. Pannill Knitting Co., 833 F.2d 1560, 1563 (Fed. Cir. 1987). The claims at issue may then be resolved on summary judgment unless the responding party establishes there is a factual dispute which must be tried. Anderson, 477 U.S. at 247-48; Sweats Fashions, 833 F.2d at 1562-63.

In this case, the material facts are either not in dispute, or are not subject to a genuine dispute, and the Government is entitled to judgment as a matter of law. Accordingly, summary judgment should be granted in favor of the United States.

B. The Government's Decision To Pay Lasker Was Not Arbitrary Or Capricious

Assuming for the sake of argument that the complaint does state a claim for which relief may be granted, CIC cannot establishe that the Government's denial of CIC's request to withhold payment from Lasker was arbitrary or capricious. The evidence demonstrates that the Government's decision should be upheld.

The courts have appropriately recognized that, during performance of a contract, the Government

> has an important interest in the timely and efficient completion of the contract work. In furtherance of this interest, the Government contracts for a broad range of rights which are designed to promote continuation of the contract work. These provisions give the Government considerable discretion and flexibility in administering the contract.

Argonaut Ins. Co. v. United States, 193 Ct. Cl. 483, 434 F.2d 1362, 1367-68 (1970). See also Balboa Ins. Co. v. United States, 775 F.2d at 1164; United States Fid. & Guar. Co. v. United States, 230 Ct. Cl. 355, 676 F.2d 622, 627-28 (1982).

As the court in Argonaut Ins. Co. noted, the subrogation right claimed by the plaintiff is a creature of equity, and to resolve a proper subrogation claim, the court must weigh the equities of the parties with due regard for the legal and equitable rights of others. See 434 F.2d at 1367. Applying this analysis, the court found the Government's position – that it should not be embroiled in disputes between the contractor and surety during contract performance, subjected to suit by the contractor for failure to make timely progress payments, or deprived of its right to

administer the contract in a manner deemed necessary to protect its interests – to be "well taken." See id. Accordingly, where the Government is entitled to exercise its discretion, the "'plaintiff has an unusually heavy burden of proof in showing that the determination made . . . was arbitrary and capricious.'" Balboa Ins. Co., 775 F.2d at 1164 (quoting Royal Indem. Co. v. United States, 208 Ct. Cl. 809, 529 F.2d 1312, 1320 (1976)). The plaintiff's burden of proof, "'must be, and is, high.'" Id.

In Balboa, the court reviewed the decisions in five other cases and identified factors that were important in determining whether the Government had exercised reasonable discretion. See Balboa Ins. Co., 775 F.2d at 1164. As in Balboa and all of the cases upon which it relied, the evidence in this case does not satisfy plaintiff's heavy burden of proving that the Government's decision was arbitrary or capricious.

As of June 25, 2004, when CIC “withdrew” its “consent” to pay Lasker, the contract was 98 percent complete, however, there were outstanding deficiencies and incomplete work that needed to be addressed. Ex. 2, 4, 6.

Because the contract was not complete, the Government's decision to make the payment was mandated by the Federal Acquisition Regulations. Section 28.106-7(a) provides:

> During contract performance, agencies **shall not** withhold payments due contractors or assignees because subcontractors or suppliers have not been paid.

(emphasis added). "It is settled law that the FPRs [Federal Procurement Regulations] have the force and effect of law." American Science and Engineering, Inc. v. United States, 229 Ct. Cl. 47, 663 F.2d 82, 87 (1981). See also Paul v. United States, 371 U.S. 245, 255 (1963); Standard Oil Co. of California v. Johnson, 316 U.S. 481, 484 (1942); American General Leasing, Inc. v.

United States, 218 Ct. Cl. 367, 587 F.2d 54, 58 (1978). Moreover, the Government contracting officer "has only that authority actually conferred by statute or regulation." Schoenbrod v. United States, 187 Ct. Cl. 627, 634, 410 F.2d 400, 404 (1969).

The obvious intent of this regulation "was to insure that contract performance will not be impeded by haggling over who was to receive contract payments." Reliance Ins. Co. v. United States, 15 Cl. Ct. 62, 67 n.5 (1988). Accordingly, where the only basis for withholding progress payments was the allegation that subcontractors were not paid, the regulation does not authorize the Government to exercise any discretion to withhold the payments. The Government's conduct in accordance with this regulation was "reasonable upon the face of the regulation." United States Fid. & Guar. Co., 676 F.2d at 631-32.

Accordingly, if the Government had withheld the progress payments as CIC had requested, the Government would have violated the Federal Acquisition Regulation. CIC knew or should have known about the FAR clause when it agreed to bond Lasker. See State of Florida v. United States, 33 Fed. Cl. 188, 194 (1995) (surety should have been aware of Government contracting procedures).

In this case, CIC cannot meet its heavy burden of demonstrating that the decision not to withhold payment from Lasker, at a time when its performance was almost complete, was an abuse of discretion. As this Court has previously recognized, "On site determinations should only be found to be abuses of discretion in extreme cases." Ohio Cas. Ins. Co. v. United States, 12 Cl. Ct. 590, 591 (1987). This is not such an extreme case.

## CONCLUSION

For the reasons set forth above, this Court should dismiss plaintiff's complaint pursuant to

RCFC 12(b)(6) and/or Rule 56.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ James M. Kinsella
JAMES M. KINSELLA
Deputy Director

s/ Doris S. Finnerman
DORIS S. FINNERMAN
Trial Attorney
Commercial Litigation Branch
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Tele: (202) 307-0300
Fax: (202) 305-7643

Attorneys for Defendant

October 27, 2005