# EXHIBIT 7

Obli No: DACA03-03-C-0011 DO#: NA Fund Citation: 57NA20033300 Freight:

Orig: KATHY L RAY Type: C Fund Account: M442244 Allot: 8071 Fast Pay:

Desc: C-130J ENGINE/PROPELLER,LRAFB AMSCO: 32100000000 Progress Pay: Y

Amend: P00001 Date: 25-FEB-2004 Work Item: 533C77 MVA: CZ Cont Contract:

Line: 0001 Resource: CONSTSVCS EOR: 3230 Prompt Pay?

<PGDN> To Execute RV or Debt Bill Query

| RV No | Reference No | Cert Date | Disb Amount | DOV No | Check No | Pmt Meth |
|---|---|---|---|---|---|---|
| 1 | 0001/23 APR-09 JUN 20 | 20-JUN-2003 | 21610.00 | 517140 | 4495799 | EFT |
| 2 | 2 | 09-SEP-2003 | 180870.21 | 519057 | 4857219 | EFT |
| 3 | 3 | 22-OCT-2003 | 117749.05 | 520110 | 5043783 | EFT |
| 4 | 4 | 08-DEC-2003 | 28594.84 | 521236 | 5250651 | EFT |
| 5 | 0005/11 NOV 03-07 JAR | 27-JAN-2004 | 220140.00 | 522332 | 5427907 | EFT |
| 6 | 6 | 18-FEB-2004 | 222260.00 | 522778 | 5512376 | EFT |
| 7 | 7, 06FEB04 - 27FEB04 | 09-MAR-2004 | 250424.00 | 523286 | 5597792 | EFT |
| 8 | 8, 28FEB04 TO 24MAR04 | 07-APR-2004 | 348231.00 | 524002 | 5740985 | EFT |
| 9 | 9 25 MAR - 26 APR 04 | 24-MAY-2004 | 247044.50 | 525163 | 5974489 | EFT |
| 10 | 10 27 APR-18 JUN 2004 | 03-AUG-2004 | 106447.50 | 526785 | 6304666 | EFT |

RR Invoice Progress Pmts RV AP Transaction Check Register

Prev Page Prev Next Query List Save Exit Next Page

# EXHIBIT 8

GENERAL CONTRACTORS
LASKER
CONSTRUCTION SERVICES

August 4, 2004

US Army Corps of Engineers
Little Rock District
Air Force Base Resident Office
P.O. Box 219
Jacksonville, AR 72078-0219

| | | |
|---|---|---|
| Re: | Project: | C130J Engine/Propeller Building<br>Little Rock Air Force Base |
| | Owner: | Little Rock District Corps of Engineers |
| | Original Contract Amount: | $1,811,000.00 |
| | Contract #: | DACA03-03-C-0011 |
| | Bond #: | B8843564 |

To Whom It May Concern:

We, The Lasker Group, Inc., Lasker, Inc., and Lasker Construction, hereby irrevocably demand that all payments now due or to become due on the above project be forwarded directly to J. Michael Hennigan, Cincinnati Insurance Company, 6200 Gilmore Road, P.O. Box 145496, Fairfield, OH 45014-5141. Cincinnati Insurance Company acted as Surety on the Performance and Payments executed on behalf of The Lasker Group, Inc., Lasker, Inc., and Lasker Construction by The Cincinnati Insurance Company ("Cincinnati") with respect to the above project.

There will be no modification or change in these instructions without the written authorization and consent of Cincinnati.

Very truly yours,

Greg Lasker, President
The Lasker Group, Inc., Lasker, Inc.,
and Lasker Construction

cc: J. Michael Hennigan
Thomas E. Crafton

# ASSIGNMENT FROM PRINCIPAL TO SURETY OF CONTRACT RIGHTS AND PROCEEDS

**KNOW ALL MEN BY THESE PRESENTS:**

THAT we, **The Lasker Group, Inc., Lasker, Inc., and Lasker Construction**, of 412 Sturgis Road, Conway, Arkansas, 72034-9261, hereby intending to be legally bound, and in consideration of One and NO/100 Dollars ($1.00), and other good and valuable consideration, receipt whereof is hereby acknowledged, for ourselves and our successors and assigns, do hereby irrevocably assign, transfer and set over unto **The Cincinnati Insurance Company**, its successors and assigns, all of our right, title and interest in and to any and all payments on account of estimates, change orders (including the final estimates, final payments, and retainages), claims and any other now due or hereafter to become due, arising out of our contracts described and identified as follows:

| | |
|---|---|
| Project: | C130J Engine/Propeller Building<br>Little Rock Air Force Base |
| Owner: | Little Rock District Corps of Engineers |
| Original Contract Amount: | $1,811,000.00 |
| Contract #: | DACA03-03-C-0011 |
| Bond #: | B8843564 |

together with all rights and action accrued or which may accrue thereunder; and we do hereby constitute and appoint said **The Cincinnati Insurance Company** our true and lawful attorney-in-fact, irrevocably in the premises, to do and perform all acts, matters and things touching upon the premises, in like manner, and to all intents and purposes as we could if personally present.

IN WITNESS WHEREOF, we have caused these presents to be executed by Greg Lasker on this the 4 day of August, 2004.

**THE LASKER GROUP, INC., LASKER, INC.**
**And LASKER CONSTRUCTION**

By: [signature]
**GREG LASKER, President**

(CORPORATE SEAL)

# EXHIBIT 9

ALBER CRAFTON, PSC
ATTORNEYS AT LAW

Hurstbourne Place, Suite 1300
9300 Shelbyville Road
Louisville, Kentucky 40222
Telephone: (502) 815-5000
Facsimile: (502) 815-5005

**Thomas E. Crafton**
tcrafton@albercrafton.com

August 30, 2004

VIA FACSIMILE
(501)988-1530

Ron Garner
Contracting Officers Representative
Department of the Army
Little Rock District, Corps of Engineers
PO Box 219
Jacksonville, AR 72078-0219

| | | |
|---|---|---|
| **Re:** | **Our Client:** | **The Cincinnati Insurance Company** |
| | **Bond No.:** | **B80-843564** |
| | **Project:** | **C-130J Engine & Propeller Storage Building Little Rock Air Force Base, Pulaski County** |
| | **Contract No.:** | **DACA03-03-C-0011** |

Dear Mr. Garner:

On June 25, 2004 I wrote John A. Balgavy via facsimile advising him that Cincinnati Insurance Company ("Cincinnati"), as surety for Lasker Group, Inc. ("Lasker"), had received approximately $400,000.00 of payment bond claims with respect to the C-130J project bonded by Cincinnati. I also, in that letter, requested that any further payments to Mr. Lasker be held up pending further approval of Cincinnati by reason of the payment bond claims against its payment bond.

On June 26, 2004 you wrote Mr. Lasker advising him that further payments would be withheld for reasons set forth in my letter to Mr. Balgavy. Cincinnati, obviously, relied upon your letter sent to Lasker believing that the project funds would be held by the U.S. Corps of Engineers for the benefit of all of the project creditors who had not been paid by Lasker.

We have recently learned that, notwithstanding our direction to withhold payment, the Corps of Engineers has made a recent payment to Lasker in an amount approximating $104,000.00 and furthermore, that Lasker provided only $20,000.00 of those funds to the payment of C-130J project creditors. We believe, therefore, that Cincinnati has been prejudiced by the premature release of funds by the Corps of Engineers and hereby request the Corps of

Engineers to reimburse Cincinnati the full cost and expenses which relate to this premature release of contract funds.

Please contact me at your very earliest convenience concerning this matter.

Very truly yours,

Thomas E. Crafton

TEC/jmw

cc: John A. Balgavy, P.E. (501-988-1530)
J. Michael Hennigan (513-603-5099)
Greg Lasker (501-470-1931)
Cyril Hollingsworth (501-375-6484)
Darrel Johnson (501-324-5680)
Indemnitors (via mail)

# EXHIBIT 10

DEPARTMENT OF THE ARMY
LITTLE ROCK DISTRICT, CORPS OF ENGINEERS
Post Office Box 867
LITTLE ROCK, ARKANSAS 72203-0867

September 10, 2004

RECEIVED
SEP 16 2004
BY:

REPLY TO
ATTENTION OF:

Contracting Division

SUBJECT: Contract No. DACW03-03-C-0011, Engine and Propeller Storage Facility, Little Rock Air Force Base, Arkansas

Alber Crafton, PSC
Attorneys at Law
Attn: Mr Thomas Crafton
Hurstbourne Place, Suite 1300
Louisville, Kentucky 40222

Dear Mr Crafton

We are in receipt of your letter dated August 30, 2004. Your letter states that the District prejudiced the Cincinnati Insurance Company by making payment to the Lasker Group for work performed on the C-130J Engine Propeller Storage Building project. You also state that these payments were made in disregard to information provide to you by the district in a June 26, 2004 letter.

We acknowledge that you were incorrectly informed that we had the authority to withhold payments to Lasker Group based on his nonpayment of subcontractors and suppliers. The Federal Acquisition Regulation, Part 28.106-7(a), Withholding Contract Payments, states "During contract performance, agencies shall not withhold payments due contractors or assignees because subcontractors or suppliers have not been paid." Therefore, we are not authorized to withhold payment to the prime contractor.

The Federal Acquisition Regulation, Part 28.106-7(b) states, "If, after completion of the contract work, the Government receives written notice from the surety regarding the contractor's failure to meet its obligation to its subcontractors or suppliers, the contracting officer shall withhold final payment. However, the surety must agree to hold the Government harmless from any liability resulting from withholding the final payment. The contracting officer will authorize final payment upon agreement between the contractor and surety or upon a judicial determination of the rights of the parties." The Little Rock District did receive an Assignment of Claims on 12 August 2004, dated 4 August 2004 the day after the Lasker Group received their last payment. As I informed you during our last telephone conversation I would try to recover the funds from Mr. Lasker. I specifically asked Mr. Greg Lasker if the Government could debit his bank account and recover the last payment he had received for the subject project. He laughed and said is there

a question here and I restated my request that he give the Government authority to debit his account - he said no. Without the contractor's permission we are not allowed to recover the payment.

We will be glad to further discuss the authority granted by the Federal Acquisition Regulation and the Defense Finance and Accounting System in resolving this matter. Please feel free to contact me at (501) 324-5720 ext 1166 or email me at darrel.l.johnson@swl02.usace.army.mil.

Sincerely,

Darrel L. Johnson
Contracting Officer

Copy Furnished:
CESWL-EC-C
CESWL-EC-CA
CESWL-EC-CM
CESWL-OC

# EXHIBIT 11

ALBER CRAFTON, PSC
ATTORNEYS AT LAW

Hurstbourne Place, Suite 1300
9300 Shelbyville Road
Louisville, Kentucky 40222
Telephone: (502) 815-5000
Facsimile: (502) 815-5005

**G. Bruce Stigger**
bstigger@albercrafton.com

February 11, 2005

Daniel L. Johnson, Contracting Officer
Department of the Army
Little Rock District, Corps of Engineers
P.O. Box 867
Little Rock, Arkansas 72203-0867

Re: Contract No. DACW03-0022, Engine and Propeller Storage Facility,
Little Rock Air Force Base, Arkansas
Request for Contracting Officer's Decision

Dear Contracting Officer:

As you are aware, this office represents Cincinnati Insurance Company ("CIC") who was the Miller Act surety to the Lasker Group on the above-referenced Project. In response to your letter to this office's Thomas Crafton dated September 10, 2004, we believe your reliance upon FAR 28.106-7 is misplaced. In situations whereby the Miller Act surety asserts the Government has improperly released progress payments to the construction contractor, the key question is whether the contracting officer reasonably exercised his discretion by paying the contractor. The American Insurance Co. v. The United States, 62 Fed.Ct. 151 (2004). With respect to the Corps' wrongful payment of $106,477.50 to Lasker on August 4, 2004, it is our opinion that the Contracting Officer abused this discretion by authorizing such payment and CIC's security has been prejudiced thereby.

The chronology of events pertinent to this issue are as follows:

May 20, 2004 (Tab A): Letter from John Balgavy, the Contracting Officer's representative, notifies Lasker as well as CIC and the SBA of Lasker's failure to pay subcontractors and Lasker's possible violations of Prompt Payment Act (31 USC §3905), and the Prompt Payment for Construction Contracts Clause (FAR 52.232-27).

June 23, 2004 (Tab B): Fax from Corps to Tom Crafton, CIC Counsel, enclosing Lasker Pay Application #10 with subcontractor payment certification.

June 25, 2004 (Tab C): Letter from Tom Crafton, CIC counsel, to Mr. Balgavy notifying the Corps of Lasker's unpaid subcontractors and Lasker's apparent false certification with Pay Application #10, and Lasker's inability to comply with its Prompt Payment

obligations. Also requests the Corps to review Lasker's contract status, to enforce their contract obligations and notifies the Corps that all surety consents for payments to Lasker are withdrawn.

June 26, 2004 (Tab D): Letter from Rod Garner, the Contracting Officer's representative, to Lasker notifying it that the Corps finds Lasker Pay Application #10 to be improperly submitted due to:

a. Requesting 100% for activities which still require punch list work;
b. Remaining contract balance is insufficient … "to protect Government's interest for outstanding payments due subcontractors and/or suppliers."
c. Breach of contract by not paying subcontractors properly;
d. False certification included with pay application.

Mr. Garner also states that the Corps will take no action on Lasker's Pay Application No. 10. However, Lasker was allowed to re-submit the pay application upon satisfying the above-described problems. This notice was also provided to Mr. Crafton and CIC by fax on June 26, 2004.

August 4, 2004 (Tab E): Lasker's letter directs the Corps to forward all payments due or to become due to CIC. Lasker also provides the Corps with an "Assignment from Principal to Surety of Contract Rights and Proceeds" dated August 4, 2004.

August 11, 2004 (Tab F): Barry Jundt of the Contracting Officer's Office emails Lasker acknowledging discussing the Notice of Assignment on August 10, 2004 and states the Corps will accept this Assignment to assist Lasker in its relations with its surety, CIC.

August 30, 2004 (Tab G): Mr. Crafton letter to Mr. Garner addressing release of contract funds to Lasker despite surety's prior request to withhold funds due to unpaid subcontractors and Corps' prior letter advising Lasker that payments were being withheld pending resolution of subcontractor debts. Crafton requests the Corps to reimburse CIC for damages associated with Corps' improper payment to Lasker.

Sept. 10, 2004 (Tab H): Darrel L. Johnson, Contracting Officer, responds to Crafton's August 30, 2004 letter and denies Crafton's request for reimbursement of the Corps' improper payment. According to Mr. Johnson, the Corps made and Lasker received the subject payment on August 11, 2004. The next day the Little Rock District received Lasker's Assignment of Claims. Mr. Johnson requests to Lasker to return the improper payment were refused.

As you are aware, the Government has an obligation owing to the surety to make payments to the contractor in accordance with the bonded contract and … "to administer the contract, during the course of its performance, in a way that does not materially increase the risk that was assumed by the surety when the contract was bonded." National Surety Corp. v. United

States, 118 F.3d 1542, 1546 (1997); American Insurance, 62 Fed.Ct. @ 156. The Federal courts have gone on to declare that

> Contract terms that provide security for the bonded performance cannot be ignored, waived, or modified without consideration of the surety's interests ... The government's failure to retain the required sums during the performance of the contract was a change in the terms from those on which the surety provided the bonds. American Insurance, 62 Fed.Ct. @ 157.

Further, the courts have found that contract retainage provisions serve as security for performance of the bonded contract and when the Government knows the contractor/principal has not met the condition precedent required for the Government to release contract funds but still pays the contractor, the surety is entitled to recover its actual damages occasioned by the Government's improper release of monies in contradiction to the terms of the bonded contract. National Surety, 118 F.3d @ 1547.

Here, the Corps had prior knowledge of Lasker's problems with not paying its subcontractors in violation of its Prompt Payment obligations, and pursuant to its contract, properly advised Lasker (and CIC) that it would take no action on Lasker's pending pay application until Lasker remedied their subcontractor payment problems.

Notwithstanding the above obligations owing to CIC, the Corps apparently waived the requirement that Lasker comply with its Prompt Payment obligations and paid said amount without proof that Lasker had complied with its contract requirements by paying its subcontractors and suppliers. By doing so, the Corps disregarded CIC's security interests in the bonded contract. As a result, the Corps disbursed $106,477.50 to Lasker and instead of the full amount being paid to Lasker's subcontractors and suppliers for this bonded Project (and thus reducing CIC's financial exposure on the bonded Project), only approximately $20,000.00[1] went to those creditors. The remaining sum of approximately $86,000.00 apparently went to other Lasker creditors or debts. That was the last payment that Lasker received on this Project. Recovery of this improper payment from Lasker has been unsuccessful.

As a result of the Contracting Officer's abuse of discretion by releasing contract funds even though Lasker had over-billed for certain activities and were on notice that Lasker had failed to properly pay its subcontractors, contract funds in the amount of $106,477.50 were improperly released by the Corps. In further disobeyance of the contract requirements and its Prompt Payment obligations, Lasker only applied approximately $86,000.00 of said payment to creditors of the bonded contract. By doing so, the Corps has impaired CIC's surety status and

---

[1] The amount of $20,000 was estimated by Greg Lasker but such amount has not been audited or otherwise verified by CIC. CIC reserves the right to amend said amount.

has increased its costs to perform its bonded obligations. Recovery of said improper payment has been fruitless and CIC has incurred damages of approximately $86,000.00 as a direct result thereof.

Based upon the above and the doctrine of equitable subrogation, CIC respectfully requests that a Contracting Officer's Decision be issued granting CIC's request to be reimbursed for all damages incurred as a result of the above described abuse of discretion (approximately $86,000.00).[2]

Respectfully submitted,

G. Bruce Stigger
*Counsel for Cincinnati Insurance Company*

GBS:ss

CERTIFICATION

I, Michael J. Hennigan, am the Associate Manager – Bond Claims for Cincinnati Insurance Company, Inc., and hereby certify that the above claim is made in good faith, that the supporting data are accurate and complete to the best of my knowledge and belief, that the amount requested accurately reflects the contract adjustment of which Cincinnati Insurance Company believes the government is liable, and that I am duly authorized to certify the above claim on behalf of Cincinnati Insurance Company.

Michael J. Hennigan, Associate Manager -- Bond Claims
CINCINNATI INSURANCE COMPANY

Subscribed and sworn to before me this 10th day of February, 2005.
My commission expires: 10/22/07

Notary Public
VICKI A. GALL
Notary Public, State of Ohio
My Commission Expires 10-22-07

[2] Pending final determination of an audit to determine how Lasker spent the subject payment, CIC reserves the right to amend this amount requested.

# EXHIBIT 12

Contracting Division

G. Bruce Stigger
Counsel for Cincinnati Insurance Company
Hurstbourne Place, Suite 1300
9300 Shelbyville Road
Louisville, Kentucky 40222

Subject: Contract No. DACW03-C-0022, Engine and Propeller Storage Facility, Little Rock Air Force Base

Dear Mr. Stigger:

This letter is in response to your letter of February 11, 2005, wherein you requested a Contracting Officer's final decision regarding an alleged wrongful payment to Lasker, Inc, (the prime contractor) on August 4, 2004, in the amount of $106,477.50. According to your letter, this payment should not have been made by the government until the non-payment of sub-contractors had been fully resolved. Your client is alleged to have suffered damages of approximately $86,000 as a result.

Since receipt of your letter, there have been several communications in an attempt to ascertain the facts and to discuss our respective positions. That has been helpful but has not led to any resolution satisfactory to both parties. Regardless, I appreciate the communications.

Although you have requested a Contracting Officer's final decision, one will not be issued as a Payment Bond surety lacks the requisite standing under the Contract Disputes Act. However, I will respond to the general allegation that a wrongful payment was made to the prime contractor.

At the time the payment in question was made, not all work on the project had been completed and this payment was not final payment. In fact over $60,000 remained to be paid. Thus, at the time of the payment on August 4, 2004, I believe the situation was governed by Federal Acquisition Regulation 28.106-7, entitled "Withholding contract payments," which reads: "During contract performance, agencies **shall not** withhold payments due contractors or assignees because subcontractors or suppliers have not been paid." (emphasis added) It is my reading of this regulation that I had no discretion to withhold payment from the contractor under these circumstances. Having no discretion to exercise, it is therefore not possible to abuse such discretion as alleged in your letter.

Based upon the above, I do not believe there was an erroneous payment made to the prime contractor, nor do I believe that the Government is indebted to the Payment Bond surety for any amounts under the prime contract.

Sincerely,

Sandra K. Easter
Contracting Officer