IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CINCINNATI INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 05-751C |
| | ) | (Judge Firestone) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS
OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

JAMES M. KINSELLA
Deputy Director

DORIS S. FINNERMAN
Trial Attorney
Commercial Litigation Branch
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Tele: (202) 307-0300
Fax: (202) 305-7643

Attorneys for Defendant

January 21, 2006

## TABLE OF CONTENTS

PAGE(S)

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT . . . . . . . . . . 1

I. Plaintiff Fails To State A Claim Upon Which Relief Can Be Granted Because Plaintiff, Having Neither Paid To Complete The Contract Nor Took Over Contract Performance Is Not Equitably Subrogated To The Rights Of The Contractor . . . . . . . . . . 1

II. In The Alternative, The Government Is Entitled To Summary Judgment . . . . . . . 9

CONCLUSION . . . . . . . . . . 11

## TABLE OF AUTHORITIES

**CASES** **PAGE(S)**

Balboa Ins. Co. v. United States,
775 F.2d 1158 (Fed. Cir. 1985) . . . . . . . . . . 2, 4

Beta Systems v. United States,
16 Cl. Ct. 219 (1989) . . . . . . . . . . 3

Dept. of the Army v. Blue Fox,
525 U.S. 255 (1999) . . . . . . . . . . 2, 7, 8

Henningsen v. United States Fidelity & Guar. Co.,
208 U.S. 404 (1908) . . . . . . . . . . 2, 3, 7

Indiana Lumbermen's Mutual Ins. Co.,
VABCA No. 3197, 92-3 B.C.A. 25 (1992) . . . . . . . . . . 10

Insurance Co. of the West v. United States,
243 F.3d 1367 (Fed. Cir. 2001) . . . . . . . . . . 1, 2, 5

JP, Inc.,
ASBCA No. 38426, 90-1 B.C.A. ¶ 22,348 (1989),
clarified on reconsideration, ASBCA No. 40068, 91-2 BCA ¶ 23,695 (1991) . . . . . . . . 10

Martin v. National Surety Co.,
300 U.S. 588 (1937) . . . . . . . . . . 3, 4, 8

Munsey Trust Co. v. United States,
332 U.S. 234 (1947) . . . . . . . . . . passim

National Surety Corp. v. United States,
118 F.3d 1542 (Fed. Cir. 1997) . . . . . . . . . . 11

Pearlman v. Reliance Ins. Co.,
371 U.S. 132 (1962) . . . . . . . . . . passim

Prairie State Bank v. United States,
164 U.S. 227 (1896) . . . . . . . . . . 2, 7

Reliance Ins. Co. v. United States,
15 Cl. Ct. 62 (1988) . . . . . . . . . . 10

## TABLE OF CONTENTS (CON'T)

**PAGE(S)**

United States Fidelity & Guarany v. United States,
475 F.2d 1377 (1973) . . . . . . . . . . 5

United States v. Johnson Controls, Inc.,
713 F.2d 1541 (Fed. Cir. 1983) . . . . . . . . . . 8

**STATUTES AND REGULATIONS**

40 U.S.C. § 270a et seq . . . . . . . . . . 13

31 U.S.C. § 203 . . . . . . . . . . 4

48 C.F.R. § 28.106-7 . . . . . . . . . . 10

48 C.F.R. § 52.232-5 . . . . . . . . . . 9

48 C.F.R. § 52.232-27 . . . . . . . . . . 9

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CINCINNATI INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 05-751C |
| | ) | (Judge Firestone) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT

I. Plaintiff Fails To State A Claim Upon Which Relief Can Be Granted Because Plaintiff, Having Neither Paid To Complete The Contract Nor Having Taken Over Contract Performance Is Not Equitably Subrogated To The Rights Of The Contractor

Plaintiff's opposition to our motion begins with the faulty premise that the Court of Appeals for the Federal Circuit and its predecessor, the Court of Claims, "have repeatedly held that the Tucker Act grants jurisdiction over a suit by a payment bond surety." Pl. Br. at 4. Indeed, no court has so held.

In Insurance Co. of the West v. United States, 243 F.3d 1367 (Fed. Cir. 2001) ("ICW", the Federal Circuit addressed – for the first time – the issue of "[w]hether the United States has waived sovereign immunity for the equitable subrogation claims of a surety." 243 F.3d at 1370. The court resolved this issue by holding that "a subrogee, after stepping into the shoes of a government contractor, may rely on the waiver of sovereign immunity in the Tucker Act and bring suit against the United States." 243 F.3d 1367, 1375.

Thus, in order to determine whether a surety who has paid the debts of another may bring suit against the United States, the Court must determine whether the surety has stepped into the shoes of a Government contractor, the party with whom the Government is in privity of contract.

The Federal Circuit provided some guidance on this issue. It said, "We have specified two circumstances in which a surety may succeed to the contractual rights of a contractor against the government: when the surety takes over contract performance or when it finances completion of the defaulted contract." Insurance Co. of the West v. United States, 243 F.3d at 1370. The court continued, admittedly in dicta: "It is well-established that a surety who discharges a contractor's obligation to pay subcontractors is subrogated only to the rights of the subcontractor. Such a surety does not step into the shoes of the contractor and has no enforceable rights against the government." 243 F.3d at 1371.

The plaintiff, Cincinnati Insurance Company ("CIC"), argues that this dicta is "incorrect" because numerous other cases have allowed payment bond sureties to sue the United States, e.g., Pearlman v. Reliance Ins. Co., 371 U.S. 132 (1962); Balboa Ins. Co. v. United States, 775 F.2d 1158 (Fed. Cir. 1985). Pl. Br. at 9. The flaw in this argument is that none of the cases cited by CIC addresses the threshold question of sovereign immunity, and, therefore, the Court cannot rely upon those cases to find a waiver of sovereign immunity. See ICW, 243 F.3d at 1372 (footnote omitted) ("The government is correct that *Balboa* and its progeny relied on *Prairie State Bank* [*v. United States*, 164 U.S. 227 (1896)], *Henningsen* [*v. United States Fidelity & Guar. Co.*, 208 U.S. 404 (1908)], or *Pearlman* to find a waiver of sovereign immunity for equitable subrogation claims against the government. Furthermore, we agree with the government that, after *Blue Fox* [*Dept. of the Army v. Blue Fox*, 525 U.S. 255 (1999)], we can no longer rely on those three cases to find a waiver of sovereign immunity.")[1]

---

[1] The Federal Circuit observed that it was obligated to follow the interpretation of Prairie State Bank, Henningsen, or Pearlman as set forth in Blue Fox, even though the interpretation may be dicta. 243 F.3d at 1372. In a similar fashion, the Court of Federal Claims "is required to give weight to the pronouncements of the Federal Circuit even if they appear by way of dictum." Beta

The question before the Court is whether ICW is correct — that is, whether a payment bond surety does not step into the shoes of the contractor and, therefore, has no enforceable rights against the Government. In order to determine whether ICW correctly followed the Court's guidance in Munsey Trust, we begin our analysis with Henningsen, which first acknowledged the subrogation rights of a payment bond surety.

In Henningson, a payment bond surety brought suit against a bank that loaned money to a Government contractor and received an assignment of the contract payments; the United States was not a party to the case. 208 U.S. at 404-05. The issue before the Court was "the respective equities of the parties." The Court easily resolved that contest, holding that the equities of the surety were "superior to that of one who simply loaned money to the contractor, to be by him used as he saw fit, either in the performance of his building contract or in any other way[.]" 208 U.S. at 410. Notably, however, the Court described the nature of the surety's performance as follows: "It paid the laborers and materialmen, and thus released the contractor from his obligations to them, and to the same extent released the government from all equitable obligations to see that the laborers and supplymen were paid." Id. (emphasis added).

The Supreme Court had the opportunity to examine again the rights of a payment bond surety in Martin v. National Surety Co., 300 U.S. 588 (1937). In this case, a Government contractor again made an assignment of his contract payments to Martin, a creditor, which conflicted with the rights of the payment bond surety. Significantly, the Government had disbursed the funds to Martin. 300 U.S. at 591. The surety brought suit against Martin, the contractor, and the United States. 300 U.S. at 592. During litigation, the surety became

---

Systems v. United States, 16 Cl. Ct. 219, 225 (1989).

insolvent and renounced all of its rights in the litigation in favor of the materialmen and laborers. 300 U.S. at 592. The trial court ruled in favor of the materialmen and laborers, and the court of appeals affirmed on the "broad ground" that "the proceeds of a building contract are chargeable in favor of materialmen with an equitable lien, which attaches upon collection, even if not before," and cannot be overridden by the contractor's payment to other creditors. 300 U.S. at 593. Justice Cardozo, writing for a unanimous Court, affirmed the ruling on "narrower" grounds, holding that where a creditor, "with knowledge of the agreement between the contractor and the surety whereby such proceeds became a fund to be devoted in the first instance to the payment of materialmen and others similarly situated, . . . the equities in favor of materialmen growing out of that agreement were impressed upon the fund" received by the creditor, and the creditor's interests were subordinate to theirs. 300 U.S. at 593-94.

With respect to the Government's conduct, the Court noted that the Government, pursuant to the Anti-Assignment Act, 31 U.S.C. § 203, could have withheld the money from the creditor, but it "did not choose to shape its course accordingly. It turned over the money to Martin as [the contractor's] representative, <u>thus discharging its indebtedness as effectively as if payment had been made directly to the principal. The case is to be viewed as if [the contractor] had received the warrant, had put the proceeds in his bank, and had paid them afterwards to Martin.</u>" 300 U.S. at 594. Thus, the fund could be distributed to the rival claimants, "with the Government discharged irrespective of the outcome." 300 U.S. at 595. This case is significant, for the Supreme Court concluded that, even though the creditor was not entitled to the funds, the surety's recourse was against the contractor and the creditor, <u>not the United States</u>. Its debt was discharged.

The rights of a payment bond surety came before the Court again in Munsey Trust Co. v. United States, 332 U.S. 234 (1947). This case was brought by the surety against the United States to recover the percentage of progress payments that were retained by the Government pursuant to its contract with the contractor. The Government asserted a right to the monies for a set-off of an unrelated claim. In resolving this dispute, the Court recognized the importance of first determining "whose rights are being asserted and who claims them." 332 U.S. at 234. The surety claimed that it was subrogated to the rights of laborers and materialmen whom it paid and of the United States. 332 U.S. at 240.

With respect to the rights of the laborers and materialmen, the Court concluded: "If the United States were obligated to pay laborers and materialmen unpaid by a contractor, the surety who discharged that obligation could claim subrogation. But nothing is more clear than that laborers and materialmen do not have enforceable rights against the United States for their compensation. 332 U.S. at 241. Further, "it is elementary that one cannot acquire by subrogation what another whose rights he claims did not have." 332 U.S. at 242. Thus, the surety, standing in the shoes of the laborers and materialmen, had no enforceable rights against the United States. See ICW, 243 F.3d at 1371.[2]

The Court also addressed the claim that the surety was subrogated to the rights of the United States. Munsey Trust, 332 U.S. at 242. In the proceeding below, the Court of Claims found in favor of the surety, relying upon the premise that retained funds are held to assure that

---

[2] CIC alleges that ICW's reliance upon this "reading" of Munsey Trust was rejected by the Court of Claims in United States Fidelity & Guarany v. United States, 475 F.2d 1377 (1973). Pl. Br. at 10. In USF&G, the court's discussion of Munsey Trust and it's attempt to reconcile it with Pearlman was in the context of determining whether subcontractors had standing to assert their rights directly; it was not addressing the scope of a payment bond surety's right of subrogation. See 475 F.3d 1381-82.

laborers and materialmen will be paid. Of this argument, the Court said, "It is hardly reasonable to withhold money in order to assure payments which perhaps can be made only from the money earned." 332 U.S. at 243. The Court further noted that it was "more likely" that the "only motive" for retaining the money was to ensure "completion of work on time." Id.

This is precisely the position argued by the payment bond surety in this case. They argue that the contractor is required to certify that he will perform his obligations to laborers and materialmen, but that the Government is required to withhold funds from the contractor in order to assure payment to laborers, notwithstanding that payment can be made only if the contractor is paid for the work performed.

The Supreme Court in Munsey Trust flatly rejected this argument, stating:

> Respondent's contention then comes to this: that by requiring the contractor to furnish assurances that he will perform his obligations to laborers and materialmen, the government has deliberately decreased the ordinary safeguards it would have had to enforce the contractor's obligations to it. We see nothing in the words of the contract or the statute to lead us to this conclusion. On the contrary, the statutory provisions requiring a separate bond for payment of laborers and materialmen were enacted for their benefit, not to the detriment of the government. It is the surety who is required to take risk. We have no warrant to increase risks of the government.

332 U.S. at 243-44. As the Court correctly noted, when laborers and materialmen are unpaid and the work is complete, "the government suffers no damage . . . because it is under no legal obligation to pay the laborers and materialmen." 332 U.S. at 244.

Later, the Supreme Court again had occasion to resolve a dispute between a payment bond surety and the trustee in bankruptcy of a Government contractor in Pearlman v. Reliance Ins. Co., 371 U.S. 132 (1962). CIC contends that Pearlman sets forth the proper scope of the surety's subrogation rights. Pl. Br. at 8-9 .

Pearlman, however, is not on point. As the Supreme Court observed, Pearlman did not involve a "question of sovereign immunity." Dept. of the Army v. Blue Fox, 525 U.S. 255, 265 (1999). But even without recognition of this obvious fact, it is clear that the Supreme Court in Pearlman did not state or imply that a payment bond surety had the right to sue the United States for progress payments that were made to a performing contractor. Furthermore, nothing in Pearlman reveals an intent to overrule Munsey Trust, because there was no occasion to do so.

As an initial matter, the dispute in Pearlman was quite different from that presented by CIC's claim. The dispute in Pearlman involved the competing equities between a payment bond surety and the trustee in bankruptcy of a Government contractor. The contract between the United States and the contractor was terminated, and another contractor completed the job. At that time, the Government was still holding over $87,000, "which plainly belonged to someone else." 371 U.S. at 134. The surety brought suit against the trustee, and the question before the Court was whether the surety had "ownership of, an equitable lien on, or a prior right to this fund before bankruptcy adjudication." 371 U.S. at 136. The United States was not a party to the proceedings.

The Supreme Court began its analyis thus: "And probably there are few doctrines better established than that a surety who pays the debt of another is entitled to all the rights of the person he paid to enforce his right to be reimbursed." 371 U.S. at 136-37. Then, relying upon Prairie State Bank v. United States, 164 U.S. 227 (1896), involving a performance bond surety, and Henningson, the Court held that the surety had a right to the retained fund. 371 U.S. at 139.

The Supreme Court then addressed the argument that Prairie Bank and Henningson were overruled by Munsey Trust, and concluded that Prairie Bank and Henningson were not disturbed. 371 U.S. at 140. The Supreme Court then set forth the dicta upon which CIC relies:

> We therefore hold in accord with the established legal principles stated above that the Government had a right to use the retained fund to pay laborers and materialmen; that the laborers and materialmen had a right to be paid out of the fund; that the contractor, had he completed his job and paid his laborers and materialmen, would have become entitled to the fund; and that the surety, having paid the laborers and materialmen, is entitled to the benefit of all these rights to the extent necessary to reimburse it.

371 U.S. at 141.[3]

Certain of these rights described by the Court, however, are plainly not subject to enforcement by a suit for money damages. It is without dispute that laborers and materialmen do not have a right to sue the United States to obtain progress payments or retained funds. "[N]othing is more clear than that laborers and materialmen do not have enforceable rights against the United States for their compensation." Munsey Trust, 332 U.S. at 241; see also Blue Fox, 525 U.S. at (subcontractor cannot collect directly from the Army by asserting an equitable lien on funds held by the Army); United States v. Johnson Controls, Inc., 713 F.2d 1541, 1550 (Fed. Cir. 1983) (a subcontractor may not recover directly from the United States for amounts owed to it by the prime). Therefore, to the extent that the Supreme Court said that "the laborers and materialmen had a right to be paid out of the fund," it clearly was not implying that the Government had waived its sovereign immunity to enable laborers and materialmen to recover directly from the United States. Furthermore, whether sureties may be entitled to the benefit of the rights of laborers and materialmen, they cannot acquire by subrogation rights that laborers and materialmen do not possess.

---

[3] Interestingly, after setting forth these principles, the Court observed that "Mr. Justice Cardozo, speaking for this Court, reached a similar result in Martin v. National Sur. Co., 300 U.S. 588, 597-598, 57 S. Ct. 531, 535, 81 L. Ed. 822 (1937)," which concluded that the Government discharged its obligations by paying contract funds to the contractor's assignee. Pearlman, 371 U.S. at 142 n.23.

Thus, Pearlman did not give payment bond sureties a right against the United States for indemnification. As the Court noted at the outset of its opinion, it was called upon only to determine whether the surety had a "legal or equitable" interest in retained funds that was prior to the right of the bankruptcy trustee. 371 U.S. at 136.

In the instant case, recognizing the limitations on the rights of laborers and materialmen, CIC argues that a payment bond surety is subrogated not only to the rights of laborers and materialmen but also to the rights of the contractor. Pl. Br. at 10. This argument flies in the face of the doctrine of equitable subrogation.

"There are few doctrines better established than that a surety who pays the debt of another is entitled to all the rights of the person he paid to enforce his right to be reimbursed." Pearlman, 371 U.S. at 136-37 (emphasis added). CIC paid the subcontractors; it is entitled to all of the subcontractors' rights to enforce its right to be reimbursed, but those rights do not include the right to sue the United States. The payment bond surety does not step into the shoes of the contractor, and no case so holds.

II. In The Alternative, The Government Is Entitled To Summary Judgment

In our opening brief, we demonstrated that CIC could not meet its heavy burden of demonstrating that the decision to not withhold payment from the contractor, at a time when its performance was almost complete, was an abuse of discretion. In rebuttal, CIC argues that the Government "departed" from the contract provisions , FAR 52.232-5 and 52.232-27, which require the contractor to certify that it has made payments to subcontractors and suppliers. CIC does not contend that the contractor did not provide such a certification. Rather, CIC contends that the certification was false and that the Government either knew or should have known that it was false. Pl. Br. at 24-25. CIC fails to point to any contract clause requiring the Government to

investigate the particulars of the contractor's certification and to withhold funds where the certification is determined by the Government to be false.

The Government in this case relied upon FAR 28.106-7 in deciding that it could not withhold payment from the contractor simply because contractors had allegedly not been paid. Pl. Ex. 13. CIC does not dispute that the contractor was continuing to perform when the payments were made. The obvious intent of this regulation "was to insure that contract performance will not be impeded by haggling over who was to receive contract payments." Reliance Ins. Co. v. United States, 15 Cl. Ct. 62, 67 n.5 (1988), and that intent was effected by the Government's proper payment of the progress payment at issue. No court has held that the Government was required to withhold payment from a contractor who is completing performance of the contract, notwithstanding this FAR provision.[4]

In this suit, CIC suit alleges that progress payment number 10 in the amount of $106,477.50 was improperly paid to the contractor. However, by its own admission, the contractor applied $86,000 from that payment "to creditors of the bonded contract." Pl. Ex. 12, p.3. In this circumstance, it can reasonably be argued that withholding the contracts funds would have led to further haggling over the right to contract payments and potential impairment of

---

[4] CIC relies upon three cases. Pl. Br. at 25. Those cases do not support CIC's interpretation of FAR 28.106-7. In Reliance Ins. Co. v. United States, 15 Cl. Ct. 62, 67 n.5, 70 (1988), the Government, in fact, withheld the funds in question after the contractor had received 99.6 percent of the contract funds. In Indiana Lumbermen's Mutual Ins. Co., VABCA No. 3197, 92-3 B.C.A. 25,065 (1992), the board held that section 28.106-7 prevented the Government from making payment while the contractor was still performing the contract, but it did not require that payments continue after "performance had ceased." In JP. Inc., ASBCA No. 38426, 90-1 B.C.A. ¶ 22,348 (1989), clarified on reconsideration, ASBCA No. 40068, 91-2 BCA ¶ 23,695 (1991), the contractor, not the surety, sought to recover amounts that the Government was withholding under the contract. The contract was completed, so the prohibition in section 28106-7 was not relevent to the board's consideration.

timely completion of the contract.

Moreover, to the extent that the Government may be liable for making a progress payment to the contractor, CIC's damages resulting from the payment cannot exceed $20,477.50 ($106,477.50 minus $86,000). See National Surety Corp. v. United States, 118 F.3d 1542, (Fed. Cir. 1997) (if unauthorized payments were expended for contract purposes so that the extent of the surety's subsequent performance was reduced thereby, any injury to the surety would to that extent be mitigated).[5]

## CONCLUSION

For the reasons set forth above and in our moving brief, this Court should dismiss plaintiff's complaint pursuant to Rule 12(b) or, in the alternative, grant the Government's motion for summary judgment pursuant to Rule 56.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ James M. Kinsella
JAMES M. KINSELLA
Deputy Director

[5] CIC's complaint argues the reverse – that the contractor paid about $20,000 to subcontractors and suppliers of the bonded contract. Complaint, ¶ 12.

s/ Doris S. Finnerman
DORIS S. FINNERMAN
Trial Attorney
Commercial Litigation Branch
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Tele: (202) 307-0300
Fax: (202) 305-7643

Attorneys for Defendant

January 21, 2006