# In the United States Court of Federal Claims

**No. 05-751C**
**(Filed: June 2, 2006)**

| | | |
|---|---|---|
| * * * * * * * * * * * * * * * * * * * | * | |
| | * | |
| **CINCINNATI INSURANCE COMPANY,** | * | |
| | * | |
| | * | |
| **Plaintiff,** | * | **Equitable Subrogation; Payment Bond** |
| | * | **Surety; Summary Judgment.** |
| **v.** | * | |
| | * | |
| **THE UNITED STATES,** | * | |
| | * | |
| **Defendant.** | * | |
| | * | |
| * * * * * * * * * * * * * * * * * * * | * | |

*George Bruce Stigger,* Madison, MI, for plaintiff.[1]

*Doris S. Finnerman,* U.S. Department of Justice, Washington, DC, with whom were *Peter D. Keisler, Assistant Attorney General* and *Director David M. Cohen,* for defendant.

## O P I N I O N

**FIRESTONE**, *Judge*.

Pending before the court is a motion by the defendant, the United States ("government" or "United States"), to dismiss the equitable subrogation claim of the

[1] Edward Graham Gallagher, counsel for the Surety Association of America, also participated in oral argument in this case.

plaintiff, Cincinnati Insurance Company ("plaintiff" or "CIC"), for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"), or, in the alternative, the government seeks summary judgment pursuant to RCFC 56. The government contends that the plaintiff, a Miller Act, 40 U.S.C. §§ 3131-3134 (2000 & Supp. 2002), surety of a government contractor who fulfilled its obligations under a payment bond on a government construction contract, may not state a claim against the United States pursuant to the doctrine of equitable subrogation.[2] Because the plaintiff paid subcontractors pursuant to its payment bond obligations, rather than taking over performance of the contract, the government argues that the plaintiff's claim for reimbursement of its costs through the doctrine of equitable subrogation must be dismissed.[3] In the alternative, the government seeks summary judgment on the plaintiff's claim that the United States was arbitrary and

---

[2] In general, that doctrine provides that a surety who provides a bond guaranteeing the performance of a contract and who performs its obligations under that bond following contractor default may step into the shoes of another and assert that person's rights in seeking reimbursement of its costs. The government does not dispute that if the plaintiff had been called upon to take over and complete performance of the contract at issue pursuant to its performance bond obligations, then the plaintiff would be subrogated to the rights of the prime contractor. As a result, a performance bond surety would be able to step into the contractor's privity of contract with the government, and therefore would be able to rely on the waiver of sovereign immunity contained in the Tucker Act, 28 U.S.C. § 1491 (2000), to sue the United States for payment.

[3] The government contends that because the plaintiff merely paid subcontractors pursuant to its payment bond obligations, the plaintiff is only subrogated to the rights of those subcontractors, who are not in privity of contract with the government and who therefore cannot sue the United States under the Tucker Act. Because the plaintiff is not in privity of contract with the government either, the government contends that the plaintiff may not sue the United States in this court.

capricious in making a progress payment to the contractor rather than to the plaintiff after the plaintiff notified the government that it believed the contractor to be in default on the contract. The government argues that as a matter of law, Federal Acquisition Regulation ("FAR") § 28.106-7 (2006) prohibited the government from withholding the payment from the contractor because the contract was still being performed.

The plaintiff argues that a payment bond surety is subrogated not only to the rights of the subcontractors who it pays, but also to the rights of the prime contractor, who is in privity of contract with the government, and that therefore a payment bond surety may state a claim for equitable subrogation in this court. The plaintiff also argues that the government is not entitled to summary judgment because FAR § 28.106-7 did not prohibit the government from withholding the payment at issue from the contractor because performance was substantially complete.

For the reasons that follow, the court agrees with the plaintiff that payment bond sureties are subrogated to the rights of both the subcontractors whom it pays and the prime contractor, who is in privity of contract with the government. Therefore the government's motion to dismiss is **DENIED**. The court also finds that there is a genuine issue of material fact, which precludes summary judgment on the merits of the plaintiff's claim. Therefore, the government's motion for summary judgment is also **DENIED**.

## BACKGROUND

The following facts are undisputed unless otherwise noted.[4] In 2003, the U.S. Army Corps of Engineers ("Corps") entered into a construction contract with Lasker, Inc. ("Lasker"), No. EACA03-03-C-0011, to perform work at the C-130J Engine and Propellor Storage Building, Little Rock Air Force Base in Pulaski County, Arkansas, for a total contract price of $1,811,000. As surety, the plaintiff provided performance and payment bonds in the amount of $1,811,000. On June 17, 2004, Lasker submitted Pay Application No. 10 seeking $146,247.40. Including this $146,247.40 payment, Lasker had received a total of $1,636,923.60, leaving a balance of contract funds of $183,684.40, the equivalent of approximately 2% of the initial contract price. On June 23, 2004, the Corps advised the plaintiff that the Corps contemplated paying Lasker only $67,000 and retaining $116,000 for closeout, punch list, and incomplete work. On June 25, 2004, the plaintiff sent a letter to the Corps indicating that it had received claims from Lasker's subcontractors and stated that the plaintiff was withdrawing all of its previous consents with respect to payments being made to Lasker.

The government's exhibit 6, which is a government form completed in response to Lasker's Pay Application No. 10, states that the actual percentage of work completed was 98%, and that "contract substantially complete . . . on 18 June 2004." In the

[4] Because of the nature of the government's legal argument, the only fact that is material to the government's motion to dismiss is the fact that the plaintiff is a surety that fulfilled its obligations under its payment bond. Therefore the court has focused on undisputed facts, rather than the allegations of the plaintiff's complaint, in providing background.

government's proposed findings of uncontroverted fact, the government proposes that "as of June 18, 2004, the contract was 98% complete." The plaintiff only admits that the contract was substantially complete as of June 18, 2004. The plaintiff does admit that as of that date, several punch list items still needed to be addressed.

On June 26, 2004, the contracting officer's representative advised Lasker that Pay Application No. 10 was not a proper invoice. The reasons stated included the fact that the remaining contract balance was insufficient to protect the government's interest for outstanding payments to subcontractors, the fact that subcontractors had not been paid from previous progress payments, and the fact that Lasker's certification of the application pursuant to FAR § 52.232-5(c), which requires a contractor to certify that all payments due to subcontractors have been paid, was inconsistent with its nonpayment of subcontractors. On July 27, 2004, Lasker submitted a revised Pay Application No. 10 and included a certification pursuant to FAR § 52.232-5(c), although it still had not paid its subcontractors..

On August 4, 2004, payment was made to Lasker in the amount of $106,447.50, without objection. On that same day, the plaintiff sent a letter to the Corps demanding that all further payments be forwarded directly to the plaintiff. On August 30, 2004, the plaintiff sent a letter to the Corps advising that it had learned of the August 4, 2004 payment to Lasker and demanding that the Corps reimburse the plaintiff for costs and expenses related to the "premature release of contract funds." On September 10, 2004,

the contracting officer responded that it was his opinion that he had been precluded from withholding payment to Lasker by FAR § 26.106-7(a). The letter also stated that the Corps had received an Assignment of Claims, which directed that the plaintiff should receive payments under the contract, on August 12, 2004, but that payment to Lasker had already been made.

The plaintiff filed its complaint in this court on July 14, 2005. The plaintiff claims that it was damaged in the amount of $86,500 by the government's payment of $106,447.50 to Lasker. The government filed its motion to dismiss, or in the alternative, for summary judgment, on October 27, 2005. Oral argument was held on April 28, 2006.[5]

## I. Motion to Dismiss

In Commercial Casualty Insurance Co. of Georgia v. United States, No. 03-2033, this court issued an opinion on May 26, 2006 addressing the government's argument that payment bond sureties may not maintain claims for reimbursement in this court. This court held that a payment bond surety steps into the shoes of the prime contractor and asserts the prime contractor's contract claim, and that therefore a payment bond surety may maintain a suit against the United States for retained contract funds still in the government's possession. The court will not repeat the analysis here. Instead, the court attaches its opinion in Commercial Casualty as Appendix A and adopts that reasoning.

[5] Oral argument in this case was consolidated with the argument in two companion cases, Commercial Casualty Insurance Co. of Georgia v. United States, No. 03-2033C, and Capitol Indemnity Corp. v. United States, No. 04-1478C. The government presented a single argument regarding privity and jurisdiction and therefore the resolution of that issue is the same for all three cases.

Moreover, in an opinion in Capitol Indemnity Corp. v. United States, No. 04-1478C, also issued on May 26, 2006, this court determined that a payment bond surety could also maintain a claim for reimbursement against the United States when the government no longer possesses the contract funds because it has disbursed them to the contractor after notification of contractor default. The court also attaches its opinion in Capitol Indemnity as Appendix B and adopts that reasoning here.

Accordingly, the court holds that the plaintiff, CIC, like the plaintiffs in Commercial Casualty and Capitol Indemnity, may maintain this action for reimbursement against the United States.

## II. Motion for Summary Judgment

### A. Standard for Decision

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." RCFC 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). A fact is material if it would affect the outcome of the suit. Id. at 248. Doubts as to factual issues must be resolved in favor of the non-moving party. Mingus Constructors, Inc. v. United States, 812 F.2d 1387, 1390 (Fed. Cir. 1987). The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A dispute is genuine "if the

evidence is such that a reasonable jury could return a verdict for the nonmoving party." Liberty Lobby, 477 U.S. at 248. In order to defeat summary judgment, the nonmoving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." RCFC 56(e); Celotex, 477 U.S. at 324.

**B. Genuine Issues of Material Fact Preclude Summary Judgment**

The government argues that it is entitled to summary judgment on the plaintiff's claim for reimbursement of its losses pursuant to the doctrine of equitable subrogation because, as a matter of law, the contracting officer did not have discretion to withhold payment from Lasker. The government argues that the plaintiff may only succeed in its claim for reimbursement based on an allegedly improper disbursement of a progress payment during performance of the contract if the disbursement was an abuse of discretion. However, the government argues that here the contracting officer did not have discretion because FAR § 28.106-7 prohibited the contracting officer from withholding progress payments from the contractor during contract performance. FAR § 28.106-7(a) provides: "During contract performance, agencies shall not withhold payments due contractors or assignees because subcontractors or suppliers have not been paid." The plaintiff argues that performance of the contract was substantially complete, and that therefore the contracting officer was required to withhold payment from Lasker once he was notified of Lasker's failure to pay subcontractors.

The court finds that there are genuine issues of material fact that preclude summary judgment. As this court explained in Capitol Indemnity, No. 04-1478C,

ordinarily a surety asserts the doctrine of equitable subrogation to acquire retained contract funds that are still in the government's possession after performance of the contract is complete. See, e.g., Prairie State Nat'l Bank of Chicago v. United States, 164 U.S. 227 (1896). However, the doctrine has been expanded by the Court of Claims and the Court of Appeals for the Federal Circuit to allow a surety to recover from the government when the government abuses its discretion in disbursing earned progress payments.

> When a contractor defaults under the contract, the obligation of the surety then arises under its performance and payment bonds. . . . [U]pon notification by the surety of the unsatisfied claims of the materialmen, the Government bec[omes] a stakeholder with respect to the amount not yet expended under the contract that it holds at the time of notification of default.

Balboa Ins. Co. v. United States, 775 F.2d 1158, 1161-62 (Ct. Cl. 1985).[6]

Once the surety notifies the government of contractor default and the government becomes a stakeholder in the remaining contract balance, the government is charged "with a duty of acting with reasoned discretion," id. at 1162, in disbursing further progress payments by considering the surety's interests and "tak[ing] reasonable steps to determine for itself that the contractor ha[s] the capacity and intention to complete the job." Id. at 1164.

[6] As this court also explained in Capitol Indemnity, the government's equitable duty to use discretion in disbursing progress payments following notification of contractor default is distinct from the government's duty not to impair the surety's interests by altering the terms of the contract or impairing the collateral that secures the contractor's performance. A breach of the latter duty discharges the surety's obligations under the bonds, and is known as the pro tanto discharge rule. See Capitol Indemnity, No. 04-1478C, slip op. at 11-12 (Fed. Cl. May 26, 2006).

However, "there is a significant difference between the Government's role before and after completion of performance on a contract." Balboa, 775 F.2d at 1164. When performance is complete and the government only retains the final contract payment, it is a mere stakeholder that has no interest of its own in the contract funds. See Argonaut Ins. Co. v. United States, 434 F.2d 1362, 1367 (Ct. Cl. 1970). But "during performance of a contract, the Government's role is substantially different from that of a mere stakeholder of the final contract payment. During performance of a contract, the Government has a vital interest in the contract's completion and, as such, its contracting officer is vested with broad discretion in administering the contract for the purpose of promoting performance." U.S. Fid. & Guar. Co. v. United States, 676 F.2d 622, 628 (Ct. Cl. 1982) (citation omitted). Therefore, "the decision of a Government contracting officer that a progress payment to a financially strapped contractor should not be withheld will be accorded deference by this court . . . ." Id.

Thus, the level of the duty owed by the government to the surety in this case depends on whether performance of the contract was complete at the time the plaintiff notified the government of Lasker's failure to pay subcontractors and the government made the payment to Lasker. Moreover, FAR § 28.106-7(a), on which the government relies, only applies during contract performance; FAR § 28.106-7(b) provides that if the surety notifies the government of contractor default "after completion of the contract work," and other conditions are met, then the "contracting officer shall withhold final

payment." The parties dispute whether performance of the contract was complete at the time the notification and payment were made. The government contends that 2% of the contract was left to be performed and therefore performance was still ongoing; the plaintiff, relying on the government's exhibit, contends that performance was "substantially complete" on June 18, 2004, when only the punch list needed to be completed. Def.'s Ex. 6. The plaintiff contends that the contract was substantially complete and therefore the government abused its discretion in releasing the contract funds to Lasker. Because the issue of contract completion is in dispute and is material to the case, summary judgment must be denied.

## CONCLUSION

For the foregoing reasons, the government's motion to dismiss the plaintiff's equitable subrogation claim is **DENIED**. The government's motion for summary judgment on the plaintiff's equitable subrogation claim is also **DENIED**.[7] The parties shall file a joint status report within 20 days of the date of this decision proposing the next steps for resolving this litigation.

**IT IS SO ORDERED.**

**s/Nancy B. Firestone**
NANCY B. FIRESTONE
Judge

---

[7] As discussed at oral argument on April 28, 2006, the plaintiff may have stated a claim for pro tanto discharge in its complaint, based on the government's violation of an express payment term in the contract between the government and Lasker, which provided that the government would not pay Lasker unless Lasker provided a certification that subcontractors had been paid. FAR § 52.232-5(c). Because the government has not moved to dismiss, or for summary judgment on, this discharge claim, the court does not reach it in this opinion.